## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

NATHAN SAUNDERS, et al.,    )
                               )
             Plaintiffs,    )
                               )
v.                         )   Docket No. 1:21-cv-00245-NT
                               )
SAPPI NORTH AMERICA, INC.    )
f/k/a S.D. Warren Company, et al.,    )
                               )
             Defendants.    )

## ORDER ON PLAINTIFFS' MOTION TO REMAND

The Plaintiffs filed this proposed class action in the Maine Superior Court in Somerset County. Defendant Sappi North America, Inc., ("**Sappi**") then removed the case to this Court pursuant to the Class Action Fairness Act ("**CAFA**"). Now before me is the Plaintiffs' motion to remand this case to the Somerset County Superior Court ("**Pls.' Mot.**"). For the reasons stated below, I **DENY** the Plaintiffs' motion.

## FACTUAL BACKGROUND

This case arises out of the alleged discharge, distribution, disposal, and spraying of various chemicals—specifically, per- and polyfluoroalkyl substances and their constituents (collectively, "**PFAS**")— by the Defendants in Somerset and Kennebec Counties. First Am. Class Action Compl. ("**FAC**") ¶¶ 1, 71–72, 80–83 (ECF No. 1-1). The Plaintiffs allege that this dispersal of PFAS has contaminated their property—including poisoning their well water and groundwater—and the property of other similarly situated individuals in these counties. FAC ¶¶ 2–5, 69–71, 73–79, 84–85.

The two named plaintiffs in this case are Nathan Saunders and Judy Hook, both of whom are Maine citizens and who own and occupy property in Somerset and Kennebec Counties, respectively. FAC ¶¶ 2, 4. Mr. Saunders and Ms. Hook seek to represent a class of individuals allegedly harmed by this PFAS contamination, and they define their proposed class to include most of the individuals[1] who have "lived or owned property in Somerset County or Kennebec County, Maine, for a period of one (1) year or more at any time between 1967 and the present." FAC ¶ 88.

The Plaintiffs allege that the seventeen companies that they have sued are in some way responsible for this dispersal of PFAS throughout Somerset and Kennebec Counties. In particular, the Plaintiffs allege that Defendants Sappi; S.D. Warren Company ("**S.D. Warren**"); Scott Paper Company ("**Scott Paper**"); Kimberly-Clark Corporation ("**Kimberly-Clark**"); Huhtamaki, Inc., ("**Huhtamaki**"); Northern SC Paper Corporation ("**Northern Paper**"); UPM-Kymmene, Inc. ("**UPM**"); Perry Videx, LLC ("**Perry Videx**"); Infinity Asset Solutions ("**Infinity**"); New Mill Capital LLC ("**New Mill Capital**"); Go Lab, Inc., ("**Go Lab**"), International Paper Company ("**International Paper**"); Verso Corporation ("**Verso**"); and Pixelle Specialty Solutions[2] ("**Pixelle**") currently own and operate—or previously owned and operated—various paper mills or paper manufacturing plants (the "**Mills**") in Somerset, Kennebec, Franklin, and Hancock Counties. FAC ¶¶ 8, 10, 15, 18, 23, 31,

---

[1] The Plaintiffs exclude some groups of people from their proposed class, First Am. Class Action Compl. ("**FAC**") ¶ 89 (ECF No. 1-1), but these exclusions are not relevant here.

[2] The named defendant is incorrectly spelled "Pixelle Speciality [sic] Solutions" in the case caption and in the first paragraph of the FAC. FAC 1–2. It is, however, correctly spelled later on in the pleading. FAC ¶¶ 34, 40.

35–36, 38–39, 40. In the case of Defendants Sappi LTD and Huhtamaki Oyj, the Plaintiffs allege that their subsidiaries—Sappi and Huhtamaki, respectively—each currently own and operate one of these Mills.[3] FAC ¶¶ 6, 8, 10, 17–18, 23. Finally, the Plaintiffs allege that the seventeenth defendant, Pine Tree Waste, Inc., ("**Pine Tree**") owned, controlled, and operated a landfill in Somerset County and contracted with the other Defendants to retain and dispose of biosolids containing PFAS from the Mills and elsewhere at this landfill. FAC ¶ 41.

For the most part, the Plaintiffs make general allegations pertaining to all of the Defendants,[4] alleging that they used PFAS in making treated paper products at the Mills; produced PFAS residuals or byproducts that were discharged into the surrounding groundwater and surface waters; and spread contaminants throughout Somerset and Kennebec Counties by disposing of biosolids containing PFAS in landfills, selling or distributing biosolids containing PFAS for fuel or fertilizer, and spraying fertilizer containing PFAS. FAC ¶¶ 66, 69, 71. In addition to outlining the operation of the Mills, the Plaintiffs specifically allege that Pine Tree disposed of 40,000 cubic yards of biosolids containing PFAS from the Mills at its landfills from at least 1976 until 1984; that International Paper spread at least 93,594 tons of biosolids containing PFAS throughout Maine from 1988 until 1998; that Verso deposited at least 46,234 tons of biosolids containing PFAS throughout Kennebec County from

---

[3]     The particularities of these mill operations are largely beside the point of this opinion.

[4]     This seemingly (and perhaps inaccurately) includes Pine Tree Waste, Inc., ("**Pine Tree**") even though Pine Tree is not similarly situated to the other sixteen Defendants. The Plaintiffs allege that Pine Tree was responsible for a landfill where contaminants were disposed of rather than for a mill that produced contaminants.

2013 to 2015; and that Kimberly-Clark and/or its subsidiary Scott Paper[5] deposited biosolids containing PFAS into a landfill in Kennebec County. FAC ¶¶ 13, 72, 81–83.

Of the seventeen defendants, only Go Lab and Pine Tree are Maine citizens, while the other fifteen are not. *See* FAC ¶¶ 6–7, 9, 11, 13, 16–17, 24–28, 30, 32–34, 41.

## LEGAL BACKGROUND

Congress enacted CAFA to expand federal jurisdiction over class actions, thereby changing the rules surrounding subject-matter jurisdiction and removal in class action cases in federal court. *See Amoche v. Guarantee Tr. Life Ins. Co.*, 556 F.3d 41, 47–48 (1st Cir. 2009). It is now the case that the federal courts have jurisdiction over most class actions where any plaintiff is diverse from any defendant, so long as the amount in controversy exceeds $5,000,000 and the class action involves more than 100 plaintiffs. 28 U.S.C. § 1332(d)(2), (5)(B). As a result, class actions that meet these requirements but are brought in state court may be removed to federal court. 28 U.S.C. §§ 1441(a), 1453(b).

CAFA also establishes certain exceptions, which provide that once a class action is removed pursuant to CAFA, a district court may—or sometimes must—decline to exercise jurisdiction if particular criteria are met. Two of these exceptions—one mandatory and one discretionary—are at issue here. The first, the 'local controversy' exception," *Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*,

---

[5]     The FAC refers to "Kimberly Scott," FAC ¶ 83, so it is unclear whether this allegation refers to Kimberly-Clark, Scott Paper, or both.

585 F.3d 33, 42 (1st Cir. 2009), requires remand if its criteria are met, *see* 28 U.S.C. § 1332(d)(4)(A). "Rather than divesting a court of jurisdiction, the local-controversy exception 'operates as a[ ] [mandatory] abstention doctrine.' " *Reece v. AES Corp.*, 638 F. App'x 755, 767 (10th Cir. 2016) (quoting *Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 636 F.3d 971, 973 (8th Cir. 2011)); *accord Hunter v. City of Montgomery*, 859 F.3d 1329, 1334 (11th Cir. 2017). CAFA's "mandatory abstention provisions are 'designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state.' " *Hollinger v. Home State Mut. Ins.*, 654 F.3d 564, 570 (5th Cir. 2011) (per curiam) (quoting *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 682 (7th Cir. 2006)). The second exception at issue here, "CAFA's discretionary exception," *Dutcher v. Matheson*, 840 F.3d 1183, 1194 (10th Cir. 2016), allows for remand but does not require it, *see* 28 U.S.C. § 1332(d)(3).

While the "burden of showing federal jurisdiction" at the removal stage "is on the defendant removing under CAFA," *Amoche*, 556 F.3d at 48, a plaintiff seeking remand bears the burden of "show[ing] that an exception to jurisdiction under CAFA applies," *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 564 F.3d 75, 78 (1st Cir. 2009); *accord Kitchin v. Bridgeton Landfill, LLC*, 3 F.4th 1089, 1093 (8th Cir. 2021) ("[T]he proponent of remand must show that each provision is met in order to trigger mandatory abstention."). In order to meet this burden, multiple circuits have held that the plaintiff must prove the elements of CAFA's jurisdictional

exceptions by a preponderance of the evidence. *Reece*, 638 F. App'x at 768 (citing cases from the Third, Fifth, Seventh, and Ninth circuits). And while some district courts have found a reasonable probability standard to be appropriate, "[u]nder either approach, 'the movant must make some minimal showing of the citizenship of the proposed class.'" *Id.* (quoting *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 802 (5th Cir. 2007)). "A complete lack of evidence does not satisfy this standard." *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013).

## PROCEDURAL BACKGROUND

In August of 2021, after the Plaintiffs had filed the FAC in Somerset County Superior Court, Sappi removed this action pursuant to CAFA. Notice of Removal (ECF No. 1).[6] In response, the Plaintiffs filed a motion to remand this case to state court, invoking the local controversy and discretionary exceptions.[7] Pls.' Mot. (ECF No. 50). Sappi then filed a response opposing remand ("**Sappi Opp'n**") (ECF No. 62), which Huhtamaki, Huhtamaki Oyj, Infinity, Perry Videx, Pine Tree, Go Lab, Pixelle, Verso, Northern Paper, and UPM adopted (ECF Nos. 63, 65–68, 70). International Paper filed a separate response in opposition ("**International Paper Opp'n**") (ECF

---

[6]    The co-defendants of Sappi North America, Inc., ("**Sappi**") did not all provide their consent for removal, Notice of Removal ¶¶ 32–38 (ECF No. 1), but such consent was not required, *see* 28 U.S.C. § 1453(b) ("A class action . . . may be removed by any defendant without the consent of all defendants.").

[7]    In addition to arguing that one of the jurisdictional exceptions in the Class Action Fairness Act ("**CAFA**") applied, the Plaintiffs also argued that there was no basis for diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Pls.' Mot. for Remand ("**Pls.' Mot.**") 6–10 (ECF No. 50). This argument was in response to Sappi's notice of removal in which Sappi not only asserted jurisdiction under CAFA, but also diversity jurisdiction under § 1332(a). Notice of Removal ¶¶ 30–53. However, two weeks after removing the case, Sappi notified the Court that its invocation of diversity jurisdiction under § 1332(a) was premised on incorrect facts and that it was withdrawing that basis for removal. Sept. 8, 2021, Letter from Counsel for Sappi (ECF No. 12).

No. 64), which addresses many of the same arguments as Sappi's opposition. Kimberly-Clark then filed a response in which it adopted both Sappi's and International Paper's oppositions. Def. Kimberly-Clark's Opp'n to Pl.'s [sic] Mot. to Remand (ECF No. 69). S.D. Warren, Sappi LTD, Scott Paper, and New Mill Capital have not opposed the motion.

## DISCUSSION

Before addressing the applicability of the local controversy and discretionary exceptions, I address the Plaintiffs' misleading and incorrect arguments about who bears the burden of establishing the propriety of remand. The Plaintiffs argue that a defendant bears the burden of proving a valid basis for removal. Pls.' Mot. 1–2. They then extrapolate from that correct statement of the law to argue that the Defendants also bear the burden to defeat the motion to remand. Pls.' Mot. 2–3. That is wrong. The issue here is no longer whether removal is proper.[8] The issue is whether remand is warranted, and it is the Plaintiffs who bear the burden of proving a valid basis for remand, *see In re Hannaford*, 564 F.3d at 78, either because the local controversy exception applies or because I should order remand pursuant to the discretionary exception.

Similarly, the Plaintiffs argue "that all uncertainties *as to removal jurisdiction* [are] to be resolved in favor of remand." Pls.' Mot. 5–6 (emphasis added). This argument, too, is misleading because I am being asked to decide the appropriateness

---

[8]     The Plaintiffs do not dispute that the Defendants met their burden of proving a valid basis for removal.

of *remand*, not removal. "CAFA's legislative history suggests that Congress intended the local controversy exception to be a narrow one, with all doubts resolved 'in favor of exercising jurisdiction over the case.'" *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (quoting S. Rep. No. 109-14, at 42 (2005)[9]); *accord Kitchin*, 3 F.4th at 1093; *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1265 (10th Cir. 2014). "The language and structure of CAFA" also "indicates that Congress contemplated broad federal court jurisdiction with only narrow exceptions." *Evans*, 449 F.3d at 1164 (internal citation omitted). To put it simply, the Plaintiffs are the parties who bear the burden of proof, so they are "not entitled to the benefit of the doubt." *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 823 (8th Cir. 2010). "[A]ny doubt about the applicability of CAFA's local-controversy exception" is to be resolved against "the party who seeks remand and the party who bears the burden of establishing that the exception applies." *Id.*

## I.   The Local Controversy Exception

### A.   Legal Standard

The local controversy exception says that "[a] district court shall decline to exercise jurisdiction . . .

   (i) over a class action in which—

---

[9]    Because this report was not issued until ten days after CAFA was signed into law, "its value as a means of discerning congressional intent is clouded." *Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 38 n.2 (1st Cir. 2009). Nevertheless, multiple circuits have relied on this report in their analysis of the jurisdictional exceptions outlined in CAFA. *See, e.g., Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 584 n.51 (7th Cir. 2017); *Bridewell-Sledge v. Blue Cross of Cal.*, 798 F.3d 923, 931–32 (9th Cir. 2015); *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1265–66 (10th Cir. 2014); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163–64 (11th Cir. 2006).

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed [the "**citizenship requirement**"];

(II) at least 1 defendant is a defendant—

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons . . . .

28 U.S.C. § 1332(d)(4)(A). Because I ultimately conclude that the Plaintiffs have failed to meet the citizenship requirement, I focus only on this requirement. *See Dutcher*, 840 F.3d at 1193 (noting that remand is required only if the plaintiffs "can meet *all* of the statutory requirements" (emphasis added)).

"For purposes of diversity jurisdiction, citizenship usually is equated with domicile." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 366 (1st Cir. 2001). "A person's domicile is the 'place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.' " *Id.* (quoting *Rodriguez–Diaz v. Sierra–Martinez*, 853 F.2d 1027, 1029 (1st Cir. 1988)). "Domicile requires both physical presence in a place and the intent to make that place one's

home." *Id.*; *see also Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1148–49 (11th Cir. 2021) ("Residency is necessary, but insufficient, to establish citizenship in a state."); *cf. Aponte-Dávila v. Mun. of Caguas*, 828 F.3d 40, 49 (1st Cir. 2016) ("Jurisdictionally speaking, residency and citizenship are not interchangeable."). While courts look to a person's domicile to determine citizenship, *Padilla-Mangual v. Pavía Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008), "[e]vidence of a person's place of residence . . . is prima facie proof of his domicile," *Hollinger*, 654 F.3d at 571. Once domicile is established, a person's state of domicile continues presumptively unless rebutted with sufficient evidence of a change in domicile, *id.*, meaning until it is proven that the person resides somewhere else with an intent to remain there, *Padilla-Mangual*, 516 F.3d at 31–32. The citizenship of the plaintiffs is generally determined as of the date of filing of the complaint. 28 U.S.C. § 1332(d)(7).

This begs the question of how a court is to evaluate the citizenship of the plaintiffs. The First Circuit has suggested that it may be appropriate to look outside the four corners of the complaint in at least some circumstances when evaluating another one of CAFA's jurisdictional exceptions, the home state exception. C*f. In re Hannaford*, 564 F.3d at 79 (noting the possibility of looking beyond the complaint in the context of that exception). This is consistent with the circuit courts that have held that a plaintiff must put forth at least some evidence to establish the citizenship of the putative members of the class. *See Smith*, 991 F.3d at 1158 ("We cannot rely only on a series of purportedly reasonable inferences to determine citizenship."); *Mondragon*, 736 F.3d at 884 ("[T]here must ordinarily be at least some facts in

10

evidence from which the district court may make findings regarding class members' citizenship for purposes of CAFA's local controversy exception."); *Reece*, 638 F. App'x at 769–70 (requiring "some persuasive substantive evidence . . . to establish . . . citizenship"); *cf. In re Hannaford*, 564 F.3d at 81 (finding that home state exception "requires a court to *assess* the citizenship of the class members" (emphasis added)). *But see Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 391–94 (6th Cir. 2016) (allowing plaintiffs to establish the citizenship requirement by relying on the rebuttable presumption that residency is proof of domicile). Examples of evidence that can be used to establish citizenship include census data, *Hollinger*, 654 F.3d at 571–72, or affidavits or survey responses from a "representative sample" of the putative class, which can then be extrapolated using statistical principles, *In re Sprint Nextel Corp.*, 593 F.3d 669, 673, 675–76 (7th Cir. 2010).

Having said this, the First Circuit has admonished that "[d]etermining whether a case belongs in federal court should be done quickly, without an extensive fact-finding inquiry." *Amoche*, 556 F.3d at 50 (quoting *Spielman v. Genzyme Corp.*, 251 F.3d 1, 4 (1st Cir. 2001)); *see Hollinger*, 654 F.3d at 570 ("Jurisdictional determinations 'should be made largely on the basis of readily available information.'" (quoting S. Rep. No. 109-14, at 44)); *Coleman v. Estes Express Line, Inc.*, 631 F.3d 1010, 1016 (9th Cir. 2011) ("Congress was particularly concerned that subject matter jurisdiction determinations be made quickly under CAFA."). So, while the burden is on the plaintiff to introduce some evidence of citizenship, this burden is a flexible one. "The evidentiary standard for establishing citizenship and domicile

at this preliminary stage must be practical and reasonable." *Hollinger*, 654 F.3d at 573; *accord Smith*, 991 F.3d at 1160. And "[t]he district court may make 'a reasonable assumption' of CAFA's citizenship requirements from evidence that indicates the 'probable citizenship of the proposed class.' " *Williams v. Homeland Ins. Co. of N.Y.*, 657 F.3d 287, 291 (5th Cir. 2011) (quoting *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 818 (5th Cir. 2007)); *see Mondragon*, 736 F.3d at 886 ("[D]istrict courts are permitted to make reasonable inferences from facts in evidence . . . .").

### B.   Analysis

The Plaintiffs initially resist the idea that they are required to put forward any evidence to establish citizenship and argue that they can rely solely on the residences of the putative class members to prove citizenship. Pls.' Omnibus Reply to Defs.' Opp'n to Pls.' Mot. for Remand ("**Pls.' Reply**") 3–4 (ECF No. 75). But the Plaintiffs have offered no evidence of the current residences of the putative class members, except for the two named plaintiffs. To be sure, the putative class includes many current residents of Kennebec and Somerset Counties, and I may be able to presume that these individuals are Maine citizens.[10] But the Plaintiffs' proposed class also

---

[10]    Even assuming the propriety of relying on the presumption that residency equals citizenship, the Defendants have sought to rebut this presumption. Sappi points out that many people have camps or second homes in Maine. Def. Sappi's Opp'n to Pls.' Mot. to Remand 7 (ECF No. 62). International Paper Company points to an analysis of vacation home data to show that Maine had the highest number of vacation homes in the nation in 2019. Def. International Paper Company's Opp'n to Pls.' Mot. to Remand 3 n.2 (ECF No. 64). The Plaintiffs respond that "only" nineteen percent of homes in Maine were vacation homes in that year. Pls.' Omnibus Reply to Defs.' Opp'n to Pls.' Mot. for Remand ("**Pls.' Reply**") 4–5 (ECF No. 75). And while this is a substantial percentage, that still means that quite a bit more than two-thirds of the homes in Maine in 2019 were not vacation homes. Nevertheless, this general data says next to nothing about the character of the homes in Kennebec and Somerset Counties in particular. Nor does it say much about the citizenship of any of the property owners who do not fall into this "vacation home" category. It is thus difficult to put too much stock into this meager

includes anyone who has resided in Kennebec and Somerset Counties for more than one year over a period of *fifty-four years*. I have no information about the residences of any of the former residents of Kennebec and Somerset Counties.[11] *See Reece*, 638 F. App'x at 760 ("Inclusion in the class definition of people who lived in, or owned property in, the class area within the last twenty years injects an additional and substantial amount of uncertainty into the citizenship determination." (quoting district court opinion)). Nor do I have any information about how many former residents comprise the proposed class. I agree that "where a proposed class is discrete in nature, a common sense presumption should be utilized in determining whether citizenship requirements have been met." *Hollinger*, 654 F.3d at 573. But here, the Plaintiffs have not proposed a discrete class.

The only evidence that the Plaintiffs offer is some general census statistics showing that Maine's population increased by 21,780 people from 2010 to 2020 and that almost half of this population growth occurred between July 2018 and July 2020. Pls.' Reply 5; Decl. of Brian H. Mahany Ex. C (ECF No. 75-4). The Plaintiffs argue that this "shows that more people are taking up residency in Maine than are leaving the state." Pls.' Reply 5. That is not necessarily so. This information does not tell me who has contributed to this increasing population—whether it is due to people "taking up residency" in Maine or instead an increase in the birth rate or in

---

bit of information. *See Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1160 (11th Cir. 2021) ("[R]equiring something more than general data sources is not impractical or unreasonable.").

[11]      In this case, the pertinent inquiry appears to be where the Plaintiffs were citizens on the day the Amended Complaint was filed.

temporary residents (such as by college students, prison inmates, or temporary workers), or something else. These statistics also provide no information about Kennebec or Somerset Counties in particular, and just because Maine as a whole is growing does not mean that these counties are. Nor do these statistics offer any information about the years between 1967 and 2010. I have no information about population changes in these years and no basis to draw conclusions about Kennebec or Somerset Counties during this timeframe. I cannot use this more recent data to draw conclusions about what happened in the past. *Cf. Reece*, 638 F. App'x at 771 ("[T]he district court would have been engaging in sheer speculation on this record to infer past property-owner/residence percentages from current ones . . . ."). "[R]equiring something more than general data sources is not impractical or unreasonable." *Smith*, 991 F.3d at 1160. And the tidbits of information that the Plaintiffs have offered are not enough to carry their burden to demonstrate the citizenship (or even residence) of the members of the putative class.

The Plaintiffs point out that a court can draw reasonable conclusions about citizenship without making an individualized inquiry into each class member. Pls.' Reply 4. I agree with the premise, but I do not agree with the conclusion that the Plaintiffs draw from it, that the generalized information they have offered is sufficient. In *In re Sprint Nextel Corp.*, the Seventh Circuit acknowledged the reasonableness of assuming a plaintiff's residence based on phone numbers and addresses, noting that it was "inclined to think that at least two-thirds of those who have Kansas cell phone numbers and use Kansas mailing addresses for their cell

14

phone bills are probably Kansas citizens." 593 F.3d at 674. Nevertheless, the court noted that drawing such a conclusion is nothing more than "guesswork. Sensible guesswork, based on a sense of how the world works, but guesswork nonetheless." *Id.* The court emphasized that "[t]here are any number of ways in which our assumptions about the citizenship of [a] class might differ from reality." *Id.* So, the court concluded that it was improper to "draw conclusions about the citizenship of class members based on things like their phone numbers and mailing addresses." *Id.*

There have been numerous cases where plaintiffs have sought to define a class using information that strongly correlates with the plaintiffs' residency (e.g., addresses, phone numbers, and car registrations) but failed to offer any information specific to the members of the class. Invariably, these plaintiffs' motions to remand were denied because there was insufficient information to establish the citizenship of the members of the class (or at least to meet the citizenship thresholds outlined in the local controversy and discretionary exceptions).[12]

The Plaintiffs rely on two cases where a court found that the citizenship requirements were met. In one, the plaintiffs sued over a project to build new nuclear power plants and proposed a class consisting of utility customers whose rates

---

[12]    *See, e.g.*, *Smith*, 991 F.2d at 1150, 1160 (putative class included any resident of series of skilled nursing homes in Florida over four-year period); *Hargett v. RevClaims, LLC*, 854 F.3d 962, 964, 966 (8th Cir. 2017) (Arkansas Medicaid-eligible beneficiaries treated at certain Arkansas hospitals); *Reece v. AES Corp.*, 638 F. App'x 755, 759, 772 (10th Cir. 2016) (citizens, residents, and property owners near Oklahoma waste disposal areas); *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 882–83, 884 (9th Cir. 2013) (purchasers of cars in California for personal use that were to be registered in California); *In re Sprint Nextel Corp.*, 593 F.3d 669, 671, 673–74 (7th Cir. 2010) (Kansas residents with Kansas phone numbers with Kansas mailing addresses); *Evans*, 449 F.3d at 1165–66 (all property owners, lessees, and licensees of Alabama properties on which waste was deposited, or those who came into contact with this waste, over eighty-five-year period).

included the costs of the project over a period of a little over a decade. *Cook v. S.C. Pub. Serv. Auth.*, Case No. 6:19-cv-03285-TLW, 2020 WL 869741, at *1 (D.S.C. Jan. 21, 2020), *appeal dismissed sub nom.*, *S.C. Elec. & Gas Co. v. S.C. Pub. Serv. Auth.*, No. 20-134(L), 2020 WL 8994366 (4th Cir. Sept. 29, 2020). That case involved the propriety of invoking the discretionary exception, *see id.* at *7, which, like the local controversy exception, contains a citizenship requirement. But the discretionary exception has a lesser threshold and only requires that at least one-third of the proposed plaintiff class be citizens of the state at issue. 28 U.S.C. § 1332(d)(3). In order to prove the citizenship of the putative members of the class, the plaintiffs in *Cook* provided the billing and service addresses for all of the putative class members, eighty-two percent of whom had billing addresses in South Carolina at some point. 2020 WL 8994366, at *7. The district court ultimately concluded, based on this evidence, that it was "utterly implausible to believe that" fewer than one-third of the plaintiffs were citizens of South Carolina, thereby concluding that the discretionary exception's less stringent citizenship requirement was met. *Id.* at *8. Ultimately, the court applied that exception and granted the plaintiffs' motions to remand. *Id.* at *8– 9.

    In the second case, the class involved residents and property owners in Flint, Michigan, who used water from the Flint River over a two-year period. *Mason*, 842 F.3d at 387–89. The Sixth Circuit criticized the "circuits that have rejected the rebuttable presumption [that residency equals domicile] in the CAFA context" for relying "on case law addressing federal subject-matter jurisdiction," since "the local

16

controversy exception is not jurisdictional." *Id.* at 392–93. The court held that a plaintiff can rely on the "rebuttable presumption that a person's residence is his domicile" and that the burden then shifts to the defendant to rebut that inference. *Id.* at 390–92. At the same time, however, the court noted that while the district court *can* rely on this presumption in deciding the propriety of remand, it is not required to do so. *Id.* at 392.

Both of these cases are distinguishable from the case at bar. In *Cook*, the plaintiffs provided the billing and service addresses for every class member. In contrast, the Plaintiffs have not provided address information for any member of the putative class except the two named plaintiffs. And, as I noted above, I have no way to know where any of the putative class members who no longer reside in Kennebec and Somerset Counties lived at the time the Amended Complaint was filed or what proportion of the class they comprise. The class in *Mason* was confined to those who had used water from the Flint River over a two-year period and was much more temporally limited than the putative class before me, which stretches back two generations. Moreover, the Sixth Circuit in *Mason* emphasized that the plaintiffs' class definition required class members to have continuously resided in Flint over several years, that all class members were property owners (which is a strong indicator of domicile), that Flint was not located near a state line, and that the defendants had offered no evidence to rebut the presumption of domicile. *Id.* at 395. Almost none of these same limitations are present here. Someone can be a member of the putative class if they merely lived in Kennebec or Somerset Counties for one

year over fifty years ago; a putative class member need not have owned property in one of those counties; Somerset County stretches to the Canadian border; and the Defendants have offered some (though not much) evidence to rebut the presumption of domicile.

The Plaintiffs lament that the Defendants' proposed standard might result in plaintiffs being forced to engage in "the arduous task of examining the domicile of every proposed class member." Pls.' Reply 3. That is not so. Had the Plaintiffs produced more specific data, it is possible they could have met their burden. They also could have relied on surveys and statistical sampling. And perhaps easiest of all, the Plaintiffs could have defined their class so as to exclude any non-citizens. *See In re Hannaford*, 564 F.3d at 81; *Smith*, 991 F.3d at 1156; *Mondragon*, 736 F.3d at 885 ("Mondragon could have limited the class by defining it to consist only of California citizens, or he could have proceeded in federal court once Capital One chose to remove the case." (footnote omitted)); *Sprint*, 593 F.3d at 673; *Evans*, 449 F.3d at 1166 ("We understand that evidence of class citizenship might be difficult to produce in this case. That difficulty, however, is to a considerable degree a function of the composition of the class designed by plaintiffs.").[13]

Because of the Plaintiffs' inability to satisfy the citizenship requirement, they have not established that the local controversy exception requires remand.

---

[13]    The Plaintiffs also seek to invoke the nomenclature of the local controversy exception, arguing that this is an "inherently local controvers[y]." Pls.' Mot. 5. But, while it is "styled as the local controversy exception, the term 'local' is a misnomer in the context of the statutory requirements—the key feature of any judicial inquiry under this CAFA exception must focus on the two-thirds fraction and not whether the surrounding facts implicate a local or national controversy." *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 802 (5th Cir. 2007).

## II.   The Discretionary Exception

### A.   Legal Standard

CAFA also contains a discretionary exception to federal jurisdiction, which provides that "[a] district court may, in the interests of justice and looking at the totality of the circumstances," remand a class action after balancing a number of factors. 28 U.S.C. § 1332(d)(3)(A)–(F). But this balancing test only becomes relevant if "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed." *Id.* § 1332(d)(3).

Unlike the local controversy exception, it is not enough that *some* defendant (along with some proportion of the plaintiffs) is a citizen of the state where the action has been brought. Rather, "the primary defendants" must all be citizens of the state. *Dutcher*, 840 F.3d at 1194–95 (noting in the context of the home state exception that the usage of "the" (a definite article) and "are" (a plural verb) means that "*all* primary defendants [must] be citizens of" the state). "[I]n deciding whether a defendant is a 'primary defendant,' a court must ask 'whether, given the claims asserted against the defendant, the defendant has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable.' " *Smith*, 991 F.3d at 1162 (quoting *Hunter*, 859 F.3d at 1136).

### B.   Analysis

The Plaintiffs do not meet either of the discretionary exception's two preliminary requirements, so I need not engage in the balancing test laid out in

19

§ 1332(d)(3). Their failure to establish the citizenship of virtually any member of the putative class, as outlined above, necessarily means a lack of proof that more than one-third of the putative class members are citizens for purposes of the discretionary exception, too. *Id.* at 1161.

The Plaintiffs have also failed to establish that all of the primary defendants are Maine citizens. To begin with, the Plaintiffs did not address this component of the inquiry. In invoking the discretionary exception, they argued that the balancing test weighed in favor of remand but never addressed the preliminary question of whether the primary defendants were Maine citizens.[14] Regardless, based on the information before me, it does not appear that all of the primary defendants are Maine citizens. I grant that Pine Tree is a primary defendant given its alleged role in disposing of waste containing PFAS. But given that the operators of the Mills were responsible for creating this waste, it must be the case that at least some of these operators are primary defendants too. And none of them is a Maine citizen except for Go Lab. Further, most of the Plaintiffs' allegations are generally made against all of the Defendants, but the Plaintiffs make specific allegations against International Paper, Verso, and Kimberly-Clark, none of which is a Maine citizen. This leads me to believe that, at the very least, these defendants are primary defendants. Because at

---

[14]    By failing to address this issue, the Plaintiffs have arguably waived any argument that the primary defendants are Maine citizens. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Nevertheless, I address the merits of the issue for the sake of completeness.

least some of the primary defendants are not Maine citizens, the discretionary exception does not apply.

## CONCLUSION

For the reasons stated above, I **DENY** the Plaintiffs' Motion to Remand.


SO ORDERED.

/s/ Nancy Torresen_____
United States District Judge

Dated this 16th day of December, 2021.

21